**Howard A. FROMSON, Plaintiff,**

v.

**ANITEC PRINTING PLATES, INC., James R. Sullivan and Thomas P. Rorke, Defendants.**

Civ. A. No. 91–30139–F.

United States District Court, D. Massachusetts.

Oct. 7, 1993.

Principal Counsel John E. Lynch and Alfred H. Hemingway, Jr., Felfe & Lynch, New York City, Local Counsel Thomas A. Kenefick, III, and John J. Egan, Edward J. McDonough, Jr., and Maurice M. Cahillane, Egan, Flanagan and Cohen, P.C., Springfield, MA, for plaintiff.

Principal Counsel William F. Dudine, Jr., S. Peter Ludwig and Robert C. Sullivan, Jr., Darby & Darby, New York City, Local Counsel Philip J. Callan, Jr., Doherty, Wallace, Pillsbury and Murphy, P.C., Springfield, MA, for Anitec Printing Plates, Inc.

Principal Counsel Arthur F. Dionne, Fishman, Dionne & Cantor, Windsor, CT, Local Counsel Jeffrey L. McCormick, Robinson, Donovan, Madden & Barry, Springfield, MA, for Sullivan and Rorke.

## MEMORANDUM REGARDING DEFENDANT'S MOTION TO COMPEL

(Docket No. 85)

PONSOR, United States Magistrate Judge.

### I. INTRODUCTION.

This is a patent infringement case embodying a dispute over an electrochemical process to convert aluminum to aluminum oxide. Plaintiff, Howard Fromson ("plaintiff" or "Fromson") alleges that the defendants infringed his reissue patent (the '754 patent). Before the court is defendant Anitec Printing Plates, Inc.'s ("defendant" or "Anitec") motion to compel discovery. Defendant seeks the production of numerous documents prepared by several of plaintiff's attorneys. Plaintiff argues that the withheld documents are protected by both the attorney-client and work-product privileges.

### II. DISCUSSION.

Professor Wigmore defines the attorney-client privilege as follows:

(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Glaxo, Inc. v. Novopharm Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C.1993) (quoting 8 J. Wigmore, Evidence § 2292 (MacNaughton rev. 1961)). The underlying rationale for the attorney-client privilege is to "encourage free communication between client and attorney." *Id.* (citing *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

Confidential communications made by personnel of the plaintiff corporation to patent counsel, or agent of patent counsel, if that agent is working at the direction of and under the supervision of patent counsel ... are protected under the attorney/client privilege if such confidential communications were made for the purpose of securing legal (as opposed to business) advice concerning the preparation or prosecution of a patent application.

*Minnesota Mining and Manufacturing Co. v. Ampad Corporation*, 1987 WL 124334, 1987 U.S.Dist. LEXIS 14437, *2, 7 U.S.P.Q.2d (BNA) 1589 (D.Mass.1987) (citation omitted).

Anitec and Fromson's positions regarding the scope of the attorney-client privilege reflect the division among the courts regarding the scope of the attorney-client privilege in the patent context. Anitec takes the more narrow position, as set forth in *Jack Winter, Inc. v. Koratron Co.*, 50 F.R.D. 225, 166 U.S.P.Q. (BNA) 295 (N.D.Cal.1970), to the effect that much of the technical or scientific information communicated between a patent attorney and his or her client is not protected by the privilege because, in many respects, the patent attorney acts as a "mere conduit of factual and technical information." *Laitram Corp. v. Hewlett–Packard Co. Inc.*, 827 F.Supp. 1242 (E.D.La.1993) (*See* Plaintiff's Supplemental Memorandum at Exhibit A).

■ Fromson's position, and one this court has accepted in previous patent infringement cases, is reflected in *Knogo Corp. v. United States, et. al*, 213 U.S.P.Q. 936 (U.S.Ct. of Cl.1980). There, the court recognized the integral role of the patent attorney and focused on the ongoing dialogue between the client and the attorney relating to the technical limits of the claimed invention. Although some courts still adhere to the *Jack Winter* line of cases, the majority of courts have viewed the role of the patent attorney more expansively and have afforded considerable protection to attorney-client communications. In *Glaxo v. Novopharm*, 148 F.R.D. at 540 the court stated that

quite often communications containing some technical or public information also contain requests from the client for legal advice about how much of that technical information must be disclosed to the patent office or how public information affects

the client's confidential legal affairs. The patent attorney is not simply a conduit between the client and the Patent Office; he or she also serves as a filter straining out that which must be included in patent prosecution documents from that which may be held back. Courts have therefore held that where a communication contains technical data or public information intermingled with requests for legal advice or the rendition of such advice, the privilege will attach.

(citation omitted).

The court is persuaded by the reasoning set forth in the *Knogo* line of cases and will analyze Anitec's motion to compel with this standard in mind. As stated by this court previously,

[t]o the extent that the authority in the case of *Jack Winter, Inc. v. Koratron Co. Inc.* is to the contrary, this court is not persuaded by it. The rendering of legal advice regarding the patentability is a quintessential role for lawyers; the sanctity of communications in this context are entitled to no less protection than other attorney/client communications. . . .

*Minnesota Mining and Manufacturing Co. v. Ampad Corp.,* 1987 WL 124334, 1987 U.S.Dist. LEXIS 14437, 7 U.S.P.Q.2D (BNA) 1589 (D.Mass.1987).

Fromson contends that all of the documents Anitec seeks fall within one of the following five categories: 1) communications by Fromson or his counsel relating to the preparation, filing of the '720 patent (2) papers relating to the prosecution of foreign or domestic patent applications on Fromson's invention, 3) documents containing or discussing the negotiation of a licensing agreement between Fromson's company and 3M, 4) correspondence embodying Fromson's 1984 efforts, through patent counsel, to put the industry on notice of his patent rights, or 5) documents and memoranda setting forth counsel's pre-filing activity relating to this litigation. All of these communications, plaintiff maintains, are protected under the attorney-client or work product privilege.

Anitec has broken down its motion to compel into four separate categories. First, Anitec seeks the production of documents relat-ing to the prosecution, both foreign and domestic, of Fromson's '720 patent application—i.e., the patent ultimately leading to the issuance of the '754 patent. Second, Anitec requests the production of documents relating to Fromson's negotiations and agreements with 3M Corporation. Third, Anitec seeks Fromson's correspondence regarding possible infringers of the '754 patent. Anitec says it is entitled to Fromson's documents relating to this civil action.

The purpose of this memorandum is to establish an outline and timeframe for further submissions that will allow the court to issue a final ruling on the motion to compel. In this vein, the following points can be made.

First, to the extent that the plaintiff has withheld documents from the defendant *solely* on the basis of the so-call "work product"—rather than attorney-client—privilege, the Motion to Compel is hereby ALLOWED. The conditional work product privilege will not shield disclosure of documents where the defendant can show that it "has substantial need of the materials in the preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Here, the lengthy delay in bringing suit both renders access to these materials vital to defendant and leaves defendant unable to replicate the information from any other source. Documents withheld solely on the basis of the "work product" privilege will be produced or made available to defendant by October 29, 1993.

Second, defendant has indicated a desire to supplement its original memorandum seeking disclosure of documents withheld on the basis of the attorney-client privilege, by arguing that plaintiff's recent identification in the joint final pretrial memorandum of certain documents as trial exhibits constitutes a waiver of the privilege as it pertains to other related documents. This brief, supplemental memorandum will be filed on or before October 18, 1993.

Third, on or before October 29, 1993 the plaintiff may file a brief reply to defendant's

supplemental memorandum and, at the same time, submit to this court for *in camera* review copies of all documents as to which it continues to claim attorney-client privilege. The documents should be indexed in some easily comprehensible manner that will permit the court to tie the documents to the memoranda and supporting material submitted with the original motion and opposition.

It is so ordered.